IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JEANETTA JOHNSON, SHARON
DUNCAN, and YOLANDA THOMAS,
each individually and on behalf of
others similarly situated                                         PLAINTIFFS

v.                    No. 5:12-cv-143-DPM

ACC1 LLC, d/b/a Arkansas Convalescent
Center; CAPSTONE HEALTH GROUP LLC;
and KYLE M. DESHOTELS, individually and
in his official capacity                                      DEFENDANTS

ORDER

1. **Decertification.** In this FLSA case, the Court conditionally certified a collective action of patient-care employees who say they weren't paid overtime for working through lunch at a nursing home. № 55 at 3. There were opt-ins; and the group currently stands at twenty eight. Whether the group stays intact depends on whether all the Plaintiffs are similarly situated. This, in turn, depends on the facts surrounding Plaintiffs' claims, the Defendants' available defenses, and whether trial as a group is fair and manageable. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012).

Plaintiffs worked as patient-care workers at the same nursing home around the same time. All were subject to a policy of having time for lunch automatically deducted from each day's pay. At a general level, Plaintiffs all say that understaffing at the nursing home often meant working through lunch. And all say that Defendants knew, or should have known, about the missed lunches, but deducted time anyway. *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781–82 (8th Cir. 2009). Defendants say Plaintiffs were responsible for letting HR know about missed lunches by filling out a form and having management approve the overtime. Some employees did this. № 122-6. Others didn't.

This reclamation policy is the center of much dispute. The policy is important because it goes to what Defendants knew about the missed lunches and what they did or didn't do in response. 29 C.F.R. § 785.13. Some Plaintiffs contend they didn't know about the policy or what forms they needed to fill out. Others note that they filled out overtime forms but weren't always paid. Some say an off-the-books policy discouraged seeking overtime altogether. These are marginal variations on a theme. The reclamation policy wasn't formalized in the employee handbooks until May 2012. *Compare* № 106-1 *with* № 44-9 *and* № 44-10. Managers and nursing directors appeared

2

to handle the missed-lunch problem differently. And among at least some employees, there seemed to be a tacit understanding that lunch was an expected casualty of being too busy. Defendants acknowledge that unapproved overtime was always prohibited as a matter of policy. № 44-6 & 44-8.

Ultimately, whether the reclamation policy was unknown, unenforced, or informally discouraged makes little legal difference. Any underpayment to employees flowed from the same common policy of automatically deducting thirty minutes for lunch and Plaintiffs' alleged inability, for various reasons, to reclaim this time. Any disparity in experiences with the reclamation policy is overshadowed by the many other facts that bind these employees' claims together.

The available defenses don't necessitate individual trials either. The argument against liability is straight forward: Plaintiffs knew about the reclamation policy, used it from time to time, and weren't discouraged from doing so. Defendants, therefore, had no reason to know folks were missing lunch or working without pay. This defense will inevitably require some individualized testimony. Defendants can offer this evidence against the

representative Plaintiffs' claims. The main defense is a common one—you could have; you should have; and we didn't know you weren't. This common defense favors keeping the group together.

Last, trying these claims together makes good sense. Thorough discovery is complete. Individually, the claims are probably not large enough to encourage zealous pursuit or even hiring a lawyer. And given the many similarities among Plaintiffs' experiences, efficiency weighs in favor of certification. The law requires similarity, not identity, on material circumstances. Enough similarity exists here. The motion to decertify, № 122, is denied.

**2. The Affidavits.** The holiday-related delay in getting signed affidavits is immaterial. But Defendants should have disclosed, before the discovery cutoff, the new witnesses that testified by affidavit: Munn, Williams, Thomas, and Blevins. Because Plaintiffs' theory has evolved somewhat, these four witnesses may testify at trial. Defendants must make each available, though, for a two-hour deposition at Plaintiffs' option and convenience by 25 April 2014. Plaintiffs must schedule any of these depositions by 11 April 2014. Motion to strike, № 125, granted in part and denied in part. № 122-4, 122-5, 122-14, 122-15, 124-2, 124-3, 124-4, and 124-5

are stricken.

**3. State law claims.** Mostly for the reasons previously explained, № 55 at 6-7 & № 94 at 1-2, the unjust-enrichment and promissory-estoppel claims fail as a matter of law. Johnson, Duncan, and Thomas have made no argument about promissory estoppel. That claim is essentially abandoned, and cannot succeed, in any event, because it duplicates exactly the statutory claims.* Johnson, Duncan, and Thomas argue hard that this case is like *QHG of Springdale v. Archer*, 2009 Ark. App. 692, 373 S.W.3d 318, and thus their unjust-enrichment claim should go to trial. They make a strong case on the health-care rules and needs that prompted their alleged overperformance.

The Court, however, sees two important distinctions. Dr. Archer's contract did not cover his 24/7 on-call situation; as a matter of law, Johnson's, Duncan's, and Thomas's contracts cover overtime and straight time, and entitle them to wages for time worked but unpaid. Second, the circumstances of alleged compulsion are different in kind and quality. Dr. Archer was the only ER doctor; his protests were regular, loud, and longstanding; and he had no way out. Taking the proof in the light most favorable to Plaintiffs, their

---

*There is a hint of straight time claims. Plaintiffs' contracts, informed by the governing law, entitle Plaintiffs to be paid for all hours worked.

5

situation was less severe in each aspect. Finally, an unjust-enrichment claim here is yet a third layer of duplication. Plaintiffs can't recover more than once on what is essentially the same claim.

Defendants acknowledge that Thomas's Arkansas Minimum Wage Act claims go forward. *№ 120 at 1 n. 1.* Duncan's and Johnson's do too. Taking any disputed facts in Plaintiffs' favor, *McCall v. Disabled American Veterans*, 723 F.3d 962, 965 (8th Cir. 2013), there remain questions about what Duncan and Johnson knew about the reclamation policy and whether they were discouraged or prohibited from using it. Was the policy, as Defendants argue, well established, clear, and accessible? Johnson says, for example, that she didn't know how to reclaim missed-lunch pay until a co-worker pointed it out. *№ 128-7 at 11.* Lunch break was only monitored closely, she continues, starting in October 2012. *№ 128-7 at 5.* Duncan contends she was not told about the reclamation policy until 2010, and was never told about how or when she could take lunch. *№ 102-3 at 10, 15–16.*

What the workers knew about the policy, whether they in fact could use it whenever needed, and what Defendants knew about the many missed lunches are material and disputed facts. Although the form has existed for a long time, there was no written policy until after suit was filed. Defendants'

authorities present much clearer factual situations. Unlike in *Hertz*, for example, there is some evidence here that Plaintiffs were discouraged from claiming overtime. *Compare* 566 F.3d at 782. The motion for partial summary judgment on the state law claims, № 119, is granted on unjust enrichment and promissory estoppel and otherwise denied. (The Court continues to be bumfuzzled about the presence of the duplicative AMWA claims.)

4. **Deshotels.** After the agreed-upon dismissal of some other defendants, № 110, the only question left in Defendants' motion for summary judgment, № 97, is whether Deshotels was Plaintiffs' employer for FLSA purposes. The question is close. The motion is denied without prejudice to renewal at trial after the Court has seen and heard the evidence. Taking into account all of the circumstances surrounding Deshotels's role as revealed by the current record, *Helmert v. Butterball*, LLC, 2010 WL 779321 at *3 (E.D. Ark. 2010), a genuine issue of material fact exists on whether Deshotels had enough operational control to be Plaintiffs' employer under the statute. *Wirtz v. Pure Ice Company*, 322 F.2d 259, 263 (8th Cir. 1963).

Several facts cut in favor of Deshotels's employer status. He's the sole owner and member of Arkansas Convalescent Center and Capstone. He talks

to Deanna Prejean, the Capstone area supervisor, regularly and sometimes daily. № *102-1 at 5*. He has final word about the companies' budgets and approves big purchases. He drafted the original version of the employee handbook in 2008 and may have had a hand in later revisions. Some years ago, he was an administrator at Capstone.

Other facts cut against employer status. Deshotels lives and works in Texas, and has no office here in Arkansas. He doesn't hire or fire any nursing-home employees. He made no decisions about the current time-keeping system. Some Plaintiffs have never met him and don't know who he is.

Material fact questions remain about Deshotels's role in the day-to-day management of Capstone and the nursing home. He is two steps removed from the facility, but appears to exercise complete control through the area supervisor and, in turn, the facility administrator. Capacity issues need more development: was Deshotels acting as the member/manager of the LLCs, or individually, or both? Given Deshotels's close ties to Capstone management, and his hands-on work with the policies guiding much of the Plaintiffs' work, the current record presents a triable issue on the question of Deshotels's status as the Plaintiffs' employer. The Court is convinced that this question will

8

come into sharper focus at trial.  The motion for summary judgment, № 97, is denied without prejudice.

* * *

Motion to decertify, № 122, denied.  Motion to strike, № 125, partly granted and partly denied.  Motion for partial summary judgment on the state law claims, № 119, granted in part and denied in part as explained.  Motion for summary judgment about Deshotels's employer status, № 97, denied without prejudice.  The Court will hold a pre-trial conference soon to handle any remaining matters and discuss trial-related issues.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

7 April 2014